UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 2012-167 (WOB)

CHARLES SCHAFFNER                                              APPELLANT

VS.                         **MEMORANDUM OPINION**

UNITED STATES TRUSTEE                                           APPELLEE


This matter is before the Court on Appellant Charles Schaffner's appeal from an Order of the United States Bankruptcy Court for the Eastern District of Kentucky granting the United States Trustee's motion for sanctions against Appellant.

The Court heard formal oral argument on this matter on October 11, 2012.  Having heard the parties, and having reviewed this matter thoroughly, the Court now issues this Memorandum Opinion.

*Factual and Procedural Background*

The material facts in this matter are undisputed. Appellant, Charles Schaffner, is a member of the Kentucky Bar and a sole practitioner with a law office in Covington, Kentucky.

In 2010, Appellant resumed practicing bankruptcy law after approximately twenty years of handling primarily

criminal and personal injury cases. To assist him, Appellant enlisted one Leonard Bickers, a former client and convicted felon, who professed to have experience in the area. Bickers's partner, Ed Lucas, was also involved. Appellant was aware that both Bickers and Lucas had been in trouble with other federal courts stemming from their activities as bankruptcy petition preparers.

Appellant provided Bickers with space in Appellant's Covington office building, accessible by a separate entrance to which Bickers and Lucas had a key. Appellant also gave Bickers use of Appellant's electronic court filing ("ECF") account and business credit card. This enabled Bickers to file bankruptcy petitions under Appellant's signature but without Appellant's involvement, review, or approval. Appellant agreed to pay Bickers $100 for each bankruptcy case filed, although he occasionally paid him more. Between 2010 and 2011, Appellant's office filed forty-five bankruptcy cases in this District.

Due to personal problems, Appellant spent little time in his office beginning in late 2010. At some point, Bickers began defrauding clients by accepting fees for their bankruptcy filings and pocketing the money. It is also undisputed that numerous requirements of the Bankruptcy Code were not followed with respect to

Appellant's bankruptcy clients and their cases. Errors in the preparation and filing of pleadings resulted in serious adverse consequences to Appellant's clients, including actual and threatened dismissals of their cases.

Further, no accurate records were kept of the money collected from Appellant's clients; the clients were not given proper receipts for the fees they paid; and client funds were not deposited into a trust account as required under the applicable ethical rules.

In the Spring of 2011, Appellant became aware of problems in his bankruptcy cases, and he scheduled a meeting with Bickers. Prior to this meeting, however, Bickers and Lucas fled and absconded with the computer containing the bulk of Appellant's bankruptcy clients' information, including sensitive information such as social security numbers and birth dates.

Around the same time, as a result of complaints about Appellant's cases from bankruptcy panel trustees in the Covington division, the United States Trustee filed a motion to examine Appellant regarding his bankruptcy practice. That motion was granted and an examination of Appellant was conducted on May 26, 2011.

On June 25, 2011, the United States Trustee moved for sanctions against Appellant in forty-three cases on the

3

basis of various violations of the rules of the Kentucky Supreme Court, the Bankruptcy Code, and the Federal Rules of Bankruptcy Procedure.  (Doc. 23).[1]

The motion for sanctions was scheduled for a hearing on July 19, 2011, but Appellant requested a continuance on several grounds, one of which was that he needed time to retain counsel.  (Doc. 26).  Appellant's motion was granted, and the hearing was reset for August 9, 2011.  (Doc. 31).  In the meantime, Appellant filed a *pro se* response to the motion for sanctions on August 1, 2011.  (Doc. 34).

The bankruptcy court held an initial hearing on August 9, 2011 (Doc. 35), at which time Appellant represented that he had obtained counsel, Robert Rapier.  The court thereafter issued a formal order for Appellant to show cause why he should not be sanctioned for the conduct described in the Trustee's motion, such sanctions potentially to include disbarment from practice before the United States Bankruptcy Court for the Eastern District of Kentucky; disgorgement of fees paid; civil penalties; and/or payment of costs and attorneys' fees.  (Doc. 36).

---

[1] The bankruptcy court consolidated the motion in all cases under case No. 10-21632.  (Doc. 28).  Record citations are to the bankruptcy court docket.

4

The court then scheduled a full evidentiary hearing for September 29, 2011.

On September 26, 2011, Appellant filed another motion to continue on the grounds that he had retained new counsel who needed additional time to prepare. (Doc. 56). The court denied that motion because Appellant had previously represented that he had retained counsel, but that counsel never entered an appearance, and the counsel he now stated had been retained also did not file the motion for continuance on his behalf or otherwise appear. (Doc. 59).

The evidentiary hearing thus proceeded as scheduled. At the conclusion of the hearing, the bankruptcy court granted the Trustee's motion from the bench, stating on the record its findings of fact and conclusions of law. (Doc. 67 at 127-141). The next day, the court entered an order incorporating those findings and directing Appellant: (1) to pay the debtors in the forty-three cases a total of $72,848, to be halved if paid within sixty days; (2) to pay another client $2,600 for attorneys' fees the client incurred in obtaining substitute counsel; and (3) to pay $5,000 in civil penalties. (Doc. 64). The court further permanently prohibited Appellant from practicing in the United States Bankruptcy Court in the Eastern District of Kentucky. (*Id.*).

5

This appeal followed.[2]

### *Analysis*

**A.     Standards of Review**

The bankruptcy court's findings of fact, including the amount of damages awarded as sanctions, are reviewed under the clearly erroneous standard.  *In re DSC, Ltd.*, 486 F.3d 940, 944 (6th Cir. 2007).  A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.  *Id.* (citations omitted).

The bankruptcy court's legal conclusions are reviewed de novo.

Finally, the bankruptcy court's imposition of sanctions is reviewed for an abuse of discretion.  *In re Wingerter*, 594 F.3d 931, 936 (6th Cir. 2010).  An abuse of discretion occurs only when the court relies on clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard.  *In re Murray, Inc.*, 392 B.R. 288, 296 (B.A.P. 6th Cir. 2008) (citation omitted).  This Court asks whether a reasonable person could agree with the bankruptcy court's decision; if

---

[2] Appellant's original notice of appeal was untimely, but this Court, in a prior appeal, permitted his appeal to go forward.  See *Schaffner v. U.S. Trustee* Covington Civil Case No. 12-24 (Doc. 17, July 6, 2012).

reasonable persons could differ as to the issue, then there is no abuse of discretion.  *Id.*

B. <u>**Application to this Appeal**</u>

The Court has reviewed this matter carefully, including thoroughly reading the transcript of the evidentiary hearing before the bankruptcy court.  The Court also had the benefit of hearing Appellant during two oral arguments in this appeal.  Having done so, the Court concludes that the bankruptcy court did not abuse its discretion in granting the Trustee's motion for sanctions against Appellant.[3]

It is important to stress that Appellant does not contest the underlying facts of this matter, as found by the bankruptcy court.  He concedes the fraud by Bickers and, importantly, concedes that this fraud occurred at a time when his oversight of his law practice was cursory, at best.[4]  As he stated to this Court, the myriad violations of the Bankruptcy Code and Rules occurred on his "watch."

---

[3] As an initial matter, while Appellant argues that the bankruptcy court improperly failed to apply the "clear and convincing" standard of proof, this is patently incorrect because the bankruptcy court explicitly held the Trustee to that standard.  (Doc. 67 at 129) ("According to the law in this circuit and other circuits, because of the egregiousness of the conduct alleged and the severity of the sanctions sought by the U.S. Trustee against Mr. Schaffner, the U.S. Trustee **must prove by clear and convincing** evidence that Mr. Schaffner's conduct should be sanctioned.") (emphasis added).

[4] Appellant testified that he was "lucky" if he was in the office ten hours a week.  (Doc. 67 at 100).

Further, while Appellant protests that he was merely an unknowing victim of a wayward employee, the detailed findings of the bankruptcy court – based on Appellant's own testimony and on that of several of his clients -- reveal Appellant's blatant disregard for his clients' interests and his own professional obligations.

For example, although Appellant argues that the bankruptcy court made no "finding" of bad faith, in fact, the court found that Appellant personally took steps to deliberately mislead the bankruptcy court and the Trustee in his clients' cases. (Doc. 67 at 134). Appellant does not contest this finding.

The court further found that Appellant was sorely deficient in, among other areas: his understanding of bankruptcy law, including basic yet mandatory requirements regarding client contracts and disclosures; his management of his office, including oversight of Bickers and maintenance of fundamental records and controls; his involvement with and advice to his clients, most of whom never met him until their first court appearance; and his handling of client funds, to the extent that there were not even records of the amount of fees paid or deposited into Appellant's account.

The bankruptcy court summarized this evidence as follows:

> Mr. Schaffner's conduct brings disgrace to the profession. His claims of remorse and victimization ring hollow where once on notice of the dereliction of others, he took no genuine remedial steps whatsoever. He did nothing to protect his clients' privacy once Mr. Bickers' conduct became fully known to him and as a result his clients' privacy has been compromised by the taking of the computer containing his clients' birth date and social security numbers.
>
> Even after the issuance of the show cause order in August and continuing through the days leading up to this evidentiary hearing, Mr. Schaffner seems incapable of complying with simple court orders and has continued to violate the trust that his clients and the Court have placed in him. Mr. Schaffner has essentially trafficked in his law license and in his ability to effect[] electronic filings in this Court.

(Doc. 67 at 138-39). Given the undisputed facts, this Court finds the bankruptcy court's summary, while harsh, to be accurate.

As to errors of law, Appellant does not contend that the bankruptcy court made any when it concluded that the above evidence constituted numerous violations of the Bankruptcy Code and Rules, as well as the Rules of the Supreme Court of Kentucky. (Doc. 67 at 136-38).

At oral argument, Appellant, who represents himself, stated that he was blameless because it was Bickers who defrauded the clients and was responsible for the deplorable conditions that resulted.

9

Of course, this argument is without merit because an attorney has an ethical duty to know what is going on in his office and is responsible to his clients to assure that their matters are professionally and ethically handled. *See* SCR 3.130(5.3); *Crawford v. Kentucky Bar Ass'n*, 364 S.W.3d 185, 186-88 (Ky. 2012); *Kentucky Bar Ass'n v. Mills*, 318 S.W.3d 89, 92 (Ky. 2010).

Appellant's final argument is that the award of sanctions should be reversed because the bankruptcy court refused to allow him time to appear with counsel. Given this record, the Court finds no merit to this argument. As the Trustee notes, Appellant stated to the bankruptcy court: "I don't think it's necessary for him to be here as my counsel." (Doc. 67 at 3). Moreover, because the above facts are undisputed, and because the bankruptcy court gave Appellant every opportunity to testify on his behalf, the Court does not believe that the involvement of counsel would have resulted in a materially different record.

All that remains, then, is Appellant's argument that the nature and amount of sanctions levied are improper. As to disbarment, the Court concludes, based on the above facts, that disbarment was not only appropriate but necessary to protect Appellant's current and prospective bankruptcy clients.

10

Further, the amount of the sanctions was based on the clients' fees as set forth in the bankruptcy court filings and is not an abuse of discretion.

The Court concludes, however, that the effective doubling of the monetary sanctions was clearly erroneous and an abuse of discretion, given that Appellant's clients are to be made whole through the disgorgement of their reported fees and that Appellant is now prohibited from appearing in the bankruptcy court in this district.  The sanctions are sufficient without the doubling.

Therefore, this Court thus **AFFIRMS IN PART AND REVERSES IN PART**.  This matter is **REMANDED** to the United States Bankruptcy Court for the Eastern District of Kentucky for proceedings consistent with this Memorandum Opinion.

This 29th day of November, 2012.



Signed By:
William O. Bertelsman  WOB
United States District Judge